UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KYLE LAMAR PASCHAL-BARROS, : | | |
| Plaintiff, : | | |
| : | | |
| v. : | No. 3:19-cv-573 (VLB) | |
| : | | |
| HENRY FALCONE, et al., : | | |
| Defendants. : | | |
| : | | |

## ORDER

Plaintiff, Kyle Lamar Paschal-Barros, currently confined at Northern Correctional Institution in Somers, Connecticut, filed this complaint *pro se* under 42 U.S.C. § 1983. Plaintiff primarily claims he was denied due process in connection with a disciplinary charge and classification decision. Plaintiff names sixteen defendants: Henry Falcone, William Mulligan, William Fanefth, Nick Rodriguez, Derrick Molden, Denise Dilworth, Kyle Mitchell, Gregoirio Robles, Thomas Kenny, Anthony Blekis, Anthony Kacprzyski, CS Davis, CS Tugie, Jane Doe, Maige, and John Doe. Plaintiff names all defendants in individual and official capacities.

Under 28 U.S.C. § 1915A (2000), the court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.* This requirement applies both when the Plaintiff pays the filing fee and when he proceeds *in forma pauperis*. *See Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999)

(per curiam).

In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Nevertheless, it is well-established that "pro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## I. Allegations

In December 2016, defendants Blekis, Kacprzyski and Kenny accused Plaintiff of assaulting defendants Blekis and Kacprzyski. Defendant Jane Doe presided over the disciplinary hearing. She stated at the hearing that the video footage was inconclusive but found Plaintiff guilty based on employee reports. On February 4, 2017, Plaintiff was charged with offenses stemming from the December 2016 incident.

2

The Garner Correctional Institution Interdisciplinary Team, which included defendants Falcone, Dilworth, and Mitchell, recommended to defendant Maige that Plaintiff be classified to Administrative Segregation. The recommendation was based on the severity of the December 2016 assault and other conduct. Defendant Maige assigned defendant Tugie to conduct a classification hearing.

Because of mental health symptoms, Plaintiff "was not properly able to be present during said hearing." Doc. #1, ¶ 7. Defendant Tugie found the allegations meritorious and recommended reclassification. Defendant Maige reclassified Plaintiff to Administrative Segregation and transferred him to Northern Correctional Institution ("Northern"), a level 5 correctional facility. Defendant John Doe denied Plaintiff's appeal.

The Administrative Segregation Program is managed by the Northern Interdisciplinary Team, which includes defendants Davis, Robles, Molden, Rodriguez, Mulligan, and Fanefth. Prior to his transfer, Plaintiff had been exposed to prolonged solitary confinement-like conditions which exacerbated his mental health conditions. During his stay at Northern, he struggled to function.

Administrative Segregation inmates at Northern are physically isolated. They are confined to their cells for 22-24 hours per day. They are allowed out of their cells for one hour of solitary exercise per weekday. Social contact is dramatically reduced; prisoners can make only one fifteen-minute social call per week. There is little environmental stimulation and constant noise. The program lasts ten months of which inmates are required to be at Northern for 120 days.

On February 19, 2019, a jury found Plaintiff not guilty of the alleged

assaults.  Plaintiff informed defendants Robles, Davis, Molden and Rodriguez of the not guilty verdict and asked to be removed from Administrative Segregation.  They denied his request, stating that the verdict did not mean that he did not commit the conduct.  Since then, Plaintiff's status has been reviewed and continued.  Plaintiff's appeal of the review decision was denied.

Plaintiff remained on Phase 1 of the Program from January 13, 2017, through March 1, 2018, when he was advanced to Phase 2 which had the same conditions with one additional phone call.  On October 2, 2018, Plaintiff was regressed to Phase 1 and returned to Northern.

## II.  Discussion

Plaintiff states that he brings eleven claims:  (1) denial of due process by subjecting him to an atypical and significant hardship, (2) cruel and unusual treatment and punishment, (3) inhumane treatment, (4) degrading treatment, (5) torture, (6) denial of equal protection of the laws, (7) false imprisonment, (8) negligent infliction of emotional distress, (9) abuse of process, (10) deliberate indifference to his rights, and (11) arbitrary detention and punishment in violation of Article first, section 9 of the Connecticut Constitution.

### A.    Due Process

Plaintiff contends that the defendants denied him due process by subjecting him to an atypical and significant hardship.  He does not indicate whether his claim relates to the disciplinary hearing or the classification hearing.  As Plaintiff includes participants in both hearings as defendants, the Court will consider whether Plaintiff was denied due process in connection with each

4

hearing.

To state a due process claim, Plaintiff must show that he had a protected liberty interest in remaining free from the conditions imposed and, if he had such an interest, that the defendants deprived him of that interest without affording him due process of law. *See Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (citing *Giano v. Selsky*, 2238 F.2d 223, 225 (2d Cir. 2001)).

No liberty interest in avoiding more restrictive confinement, such as punitive or administrative segregation, arises under the Constitution itself. *Wilkinson v. Austin,* 545 U.S. 209, 221–22 (2005). However, such an interest may arise if state "statutes or regulations require, in 'language of an unmistakably mandatory character,' that a prisoner not suffer a particular deprivation absent specified predicates." *Tellier v. Fields,* 280 F.3d 69, 81 (2d Cir.2000) (quoting *Welch v. Bartlett,* 196 F.3d 389, 392 (2d Cir.1999)) (quotation marks omitted).

Before a cognizable liberty interest exists, the new placement must "impose[ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson,* 545 U.S. at 223 (quoting *Sandin v. Conner,* 515 U.S. 472, 484 (1995)). "[T]he duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered." *Colon v. Howard,* 215 F.3d 227, 231 (2d Cir. 2000). A very long period of segregation confinement—longer than 305 days—is sufficiently atypical to trigger due process protections. *Palmer v. Richards,* 364 F.3d 60, 65 (2d Cir. 2004). Further, it is not just the duration of confinement but also the restrictions which together determine whether conditions are sufficiently atypical to create a liberty right

5

which an inmate cannot be denied without pre-deprivation procedural due process. *Welch v. Bartlett*, 196 F.3d 389, 393-95 (2d Cir.1999). The conditions under which Plaintiff was held are sufficiently atypical to trigger a right to pre-deprivation procedural due process. *Id.*

Plaintiff alleges he had a disciplinary hearing and that defendant Jane Doe presided over the hearing. He does not identify any process he was not afforded. Nor does he specify what sanctions were issued. Thus, there are no facts suggesting that Jane Doe subjected Plaintiff to an atypical and significant hardship without a pre-deprivation disciplinary hearing or that he was not afforded the requisite procedural safeguards at the hearing. The claim against defendant Jane Doe is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff alleges that defendants Kenny, Blekis, and Kacprzyski issued the disciplinary report for assault. Although he alleges that he was acquitted of criminal charges based on the incident, Plaintiff does not deny his involvement in the incident or state in the Complaint that the accusation was false. Further, even if Plaintiff had alleged that the charge was false, that would not save his claim.

A false accusation, without more, is not cognizable under section 1983 as a denial of due process. *Mitchell v. Senkowski*, 158 F. App'x 346, 349 (2005); *Freeman v. Rideout*, 808 F.2d 949, 951-52 (2d Cir. 1986) ("The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongfully accused of conduct which may result in the deprivation of a protected liberty interest."). A false disciplinary report "violates due process only where either procedural protections were denied that would have allowed the inmate to expose

the falsity of the evidence against him … or where the fabrication of evidence was motivated by a desire to retaliate for the inmate's exercise of his substantive constitutional rights…." *Mitchell*, 158 F. App'x at 349 (citation omitted). Plaintiff does not allege any retaliatory motive or denial of procedural protections. Thus, the claims against defendants Kenny, Blekis, and Kacprzyski are dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff also challenges the process provided at the classification hearing. Before he can challenge those procedures, however, Plaintiff must establish a liberty interest in avoiding classification to Administrative Segregation. Although the Constitution does not afford inmates a liberty interest in avoiding transfer to more adverse conditions of confinement, a liberty interest may be created under state law subject to the limitation set forth in *Sandin*. *Wilkinson*, 545 U.S.at 221-22; *see Walker v. Fischer*, 523 F. App'x 43, 44 (2d Cir. 2013) (*Sandin* analysis appropriate for due process challenge to placement in restrictive housing).

Plaintiff describes the conditions in Administrative Segregation as extended solitary confinement, limited social contact or environmental stimulation, and constant noise. The Court will assume, for purposes of this order only, that Plaintiff has a protected liberty interest in avoiding classification to Administrative Segregation.

Once the liberty interest has been determined, the process required is that set forth in *Hewitt v. Helms*, 459 U.S. 460 (1983). *Wilkinson*, 545 U.S. at 229. In *Hewitt*, the Supreme Court held that prior to an inmate's placement in administrative segregation, he "must merely receive some notice of the charges

7

against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding whether to transfer him to administrative segregation." 459 U.S. at 476.

Plaintiff alleges that, because of mental health symptoms, he "was not properly able to be present during said hearing." Doc. #1, ¶ 7. He further alleges that he later learned of the classification decision. Based on these allegations the Court interprets the complaint as alleging Plaintiff had no opportunity to present his views about the reclassification. Thus, the Court will permit the due process claim relating to the classification hearing to proceed against defendants Tugie, Maige, and John Doe.

Plaintiff also alleges that the Garner Interdisciplinary Team, composed of defendants Falcone, Dilworth, and Mitchell, recommended reclassification to Administrative Segregation based on the disciplinary finding and other conduct. A prisoner enjoys no constitutional due process protection against an unjustified classification recommendation. The required process is afforded when the recommendation results in a hearing. *See Samms v. Fischer*, No. 9:10-CV-0349(GTS), 2013 WL 5310215, at * 8-9 (N.D.N.Y. Sept. 20, 2013) (citations omitted). As a hearing was scheduled in response to the recommendation, the due process claims against defendants Falcone, Dilworth, and Mitchell are dismissed pursuant to 28 U.S.C. § 1915A(B)(1).

B.  Eighth Amendment

Plaintiff's claims for cruel and unusual treatment and punishment, inhumane treatment, degrading treatment, torture, and deliberate indifference to

8

his rights appear to be different descriptions of an Eighth Amendment violation.

To state a cognizable Eighth Amendment claim based on unconstitutional conditions of confinement, Plaintiff must allege facts establishing "both an objective element—that the prison officials' transgression was 'sufficiently serious'—and a subjective element—that the officials acted, or omitted to act, with a 'sufficiently culpable state of mind.' *i.e.*, with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapanolas*, 308 F.3d 180, 185 (2d Cir. 2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1999)). To establish the objective element, Plaintiff must show that his conditions of confinement were more than "restrictive [or] even harsh"; he must show that he was denied "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). He can do this by showing that his confinement violated contemporary standards of decency, *i.e.,* the defendants deprived him of a basic human need, such as food, clothing, shelter, medical care, and reasonable safety. *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993). To meet the subjective element, Plaintiff must allege facts showing that the defendants knew "of and disregard[ed] an excessive risk to inmate health or safety," *i.e.*, the defendants were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and … dr[e]w the inference." *Phelps*, 308 F.3d at 185-86 (quoting *Farmer*, 511 U.S. at 837)) (internal quotation marks omitted).

Plaintiff alleges that he was held in conditions similar to solitary confinement for nearly fifteen months and then was regressed to the same conditions for another six months prior to filing the complaint. He also alleges

9

the conditions exacerbated his mental health conditions which delayed his progression through the program. The Court considers the allegations sufficient to allege deprivation of reasonable mental health care. Plaintiff alleges that defendants Davis, Robles, Molden, Rodriguez, Mulligan, and Fanefth managed the Administrative Segregation program at Northern. Plaintiff does not allege that he informed any of these defendants of his mental health issues. Thus, the complaint fails to state plausible Eighth Amendment claims against these defendants. Plaintiff may file an amended complaint to re-assert this claim only if he can allege facts demonstrating that defendants Davis, Robles, Molden, Rodriguez, Mulligan, and Fanefth knew of the risk to his mental health and disregarded that risk.

    C.    False Imprisonment

Plaintiff asserts a claim for false imprisonment. As he was never confined pursuant to the state assault charge on which he was found not guilty, the Court assumes that the claim is based on his confinement to Administrative Segregation.

Claims for false imprisonment, whether brought pursuant to section 1983 or under state law, are analyzed under state law. *See El Badrawi v. Department of Homeland Sec.*, 579 F. Supp. 2d 249, 269 (D. Conn. 2008) ("The elements of false arrest/false imprisonment under Connecticut law are essentially the same elements needed to articulate a Fourth Amendment violation.") (citations omitted). Under common law, there is no claim for false imprisonment where the claim relates only to the conditions of confinement. "If a private or state actor is

entitled to hold a prisoner, liability for false imprisonment never rises or falls based on the conditions under which he is held…. The inquiry ends, at least for purposes of the tort of false imprisonment, upon the finding that some form—any form—of confinement was legally permitted." *McGowan v. United States*, 94 F. Supp. 3d 382, 391 (E.D.N.Y. 2015) (citing *Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012)); *see also Joyner v. Wezner*, No. 418200, 2000 WL 1658285, at *4 (Conn. Super. Ct. Oct. 5, 2000) ("If correctional officials have authority to confine an inmate, they cannot sensibly be held liable for the tort of false imprisonment because they have chosen to confine him in one correctional facility rather than another.").

The Department of Correction website shows that, on August 8, 2013, Plaintiff was sentenced to a seven-year term of imprisonment for robbery. He is scheduled to be released on January 10, 2020. [www.ctinmateinfo.state.ct.us/detailsupb.asp?id_inmt_num=390410](www.ctinmateinfo.state.ct.us/detailsupb.asp?id_inmt_num=390410) (last visited May 13, 2019). As Plaintiff was in the custody of the Department of Correction on other charges during the period in question, there is no factual basis for a false imprisonment claim.

### D. Equal Protection

Plaintiff also asserts a claim for denial of equal protection of the laws. The Equal Protection Clause protects prisoners from invidious discrimination. This provision does not mandate identical treatment for each individual; rather, it requires that "all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal

protection claim, Plaintiff must allege facts showing that he was treated differently from similarly-situated individuals and that the reason for the different treatment was based on "impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (internal quotation marks and citation omitted).

Plaintiff does not mention any other inmates in his Complaint. Thus, he has not identified any similarly situated inmates who were treated differently to support an equal protection claim. Nor does he allege facts suggesting any impermissible motive for his treatment. Instead, he appears to base his claim on the fact that he remains in Administrative Segregation even though he was found not guilty of criminal charges based on the same underlying incident. The Court concludes that Plaintiff fails to state a plausible equal protection claim.

E. State Law Claims

Finally, Plaintiff asserts state law claims for negligent infliction of emotional distress, abuse of process, and violation of Article first, section 9 of the Connecticut Constitution.

The defendants are protected by sovereign immunity from all state law claims asserted against them in their official capacities. *See Castillo v. Hogan*, No. 3:14cv1166(VAB), 2016 WL 706167, at *5 (D. Conn. Feb. 22, 2016) ("The doctrine of sovereign immunity protects state officials and employees from lawsuits resulting from the performance of their duty.") (quoting *Hultman v. Blumenthal*, 67 Conn. App. 613, 620, 787 A.2d 666, 672, *cert. denied*, 259 Conn.

929, 793 A.2d 253 (2002).

State employees are also protected from suits for negligence. See Conn. Gen. Stat. § 4-165 ("No state officer or employee shall be personally liable for damages or injury, not wanton or reckless or malicious, caused in the discharge of his duties or within the scope of his employment.") Thus, the claim for negligent infliction of emotional distress is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Plaintiff lists abuse of process as one of his claims. "Connecticut case law indicates that, '[T]o prevail on an abuse of process claim, the Plaintiff must establish that the defendant used a judicial process for an improper purpose.'" *Miles v. City of Hartford*, 445 F. App'x 379, 384 (2d Cir. 2011) (citation omitted). Although Plaintiff alleges that he was criminally charged with assault, he does not allege that any defendant was responsible for the state charges. Thus, he alleges no facts to support a claim for abuse of process.

In addition, even if one of the defendants was responsible, he does not allege an improper purpose. An "improper purpose must be the primary, rather than the incidental, reason the tortfeasor engages in the process in question." *Id.* (citation omitted). Plaintiff alleges no facts suggesting that the criminal charges were filed for an improper purpose. Any claim for abuse of process is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Finally, Plaintiff asserts a claim for violation of Article first, section 9 of the Connecticut Constitution. Section 9 provides that "[n]o person shall be arrested, detained or punished except in cases clearly warranted by law." As the provision

13

references punishment, Plaintiff appears to assume that it applies to this case. In *Binette v. Sabo*, 244 Conn. 23, 710 A.2d 688 (1998), the Connecticut Supreme Court recognized a private right of action under Article first, sections 7 and 9 for illegal searches and seizures of a private home. The court cautioned, however, that the holding "does not mean that a constitutional cause of action exists for every violation of our state constitution." *Id.* at 47, 710 A.2d at 700.

The Connecticut Supreme Court has not applied section 9 in the context of a prisoner case relating to conditions of confinement and at least one superior court case has declined to do so. *See Torres v. Armstrong*, 2001 WL 1178581, at *6 n.6 (Conn. Super. Ct. Sept. 6, 2001) (declining to recognize claim for damages for housing inmates with mental health problems in same protective custody unit as Plaintiff under Article first, section 9 where Plaintiff has not pursued remedies with claims commission or under federal law). Absent clear authorization of a private right of action under these facts, the Court declines to exercise supplemental jurisdiction over Plaintiff's claim. See 28 U.S.C. § 1367(c)(1) ("The district courts may decline to exercise supplemental jurisdiction over a claim" that "raises a novel or complex issue of State law…."). Nothing in this decision precludes Plaintiff from pursuing this claim in state court.

## CONCLUSION

The due process claims against defendants Jane Doe, Kenny, Blekis, Kacprzyski, Falcone, Dilworth, and Mitchell, the false imprisonment claim, the equal protection claim, and the state law claims for negligent infliction of emotional distress, and abuse of process are DISMISSED pursuant to 28 U.S.C. §

14

1915A(b)(1).  The Court declines to exercise supplemental jurisdiction over Plaintiff's claim for violation of Article first, section 9 of the Connecticut Constitution.

Plaintiff's Eighth Amendment claims are DISMISSED without prejudice to filing an amended complaint.  To be legally sustainable any amended complaint must include facts demonstrating that defendants Davis, Robles, Molden, Rodriguez, Mulligan, and Fanefth knew of the risk to his mental health from confinement in the Administrative Segregation Program and disregarded that risk.  Any amended complaint shall be filed within thirty-five days from the date of this order.

The case will proceed on Plaintiff's due process claim against defendants Tugie, Maige, and John Doe relating to the classification hearing.

In accordance with the foregoing analysis, the Court enters the following orders:

(1)  The Clerk shall verify the current work address for defendants Tugie and Maige with the Department of Correction Office of Legal Affairs, mail waiver of service of process request packets containing the Complaint and this Order to each defendant within twenty-one (21) days of this Order, and report to the court on the status of the waiver request on the thirty-fifth (35) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshal Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

**(2)** The Clerk shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal is directed to effect service of the Complaint, this Order, and Plaintiff's motion for preliminary injunctive relief, Doc. #6, on defendants Tugie and Maige in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

**(3)** The Clerk shall send written notice to Plaintiff of the status of this action, along with a copy of this Order.

**(4)** The Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

**(5)** The defendants shall file their response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include all additional defenses permitted by the Federal Rules.

**(6)** Pursuant to Federal Rules of Civil Procedure 26 through 37, discovery shall be completed within seven months (210 days) from the date of this order. The parties shall comply with the Pro Se Prisoner Case Standing Order entered on the docket in this case. Discovery requests need not be filed with the court.

(7)     All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(8)     Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9)     If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that Plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case.  Plaintiff must give notice of a new address even if he is incarcerated.  Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If Plaintiff has more than one pending case, he should indicate all the case numbers in the notification of change of address.  Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(10)    Plaintiff shall utilize the Prisoner E-filing Program when filing documents with the court.  Plaintiff is advised that the Program may be used only to file documents with the court. Plaintiff shall consult the Federal Rules of Civil Procedure and this district's Local Rules when in doubt as to whether a document may be filed and comply with Rule 7 which requires a party to state the legal and factual basis for any relief sought.   As local court rules provide that discovery requests are not filed with the court, discovery requests must be served on defendants' counsel by regular mail.

(11) Plaintiff shall provide the full name and current work address for John Doe as soon as he obtains this information through discovery. Failure to identify defendant Doe will result in the dismissal of all claims against him.

(12) Defendants are directed to file their response to Plaintiff's motion for preliminary injunctive relief, Doc. #6, along with their response to the Complaint.

SO ORDERED.

Dated this 14th day of May 2019 at Hartford, Connecticut.

                                                 /s/
                                       **Vanessa L. Bryant**
                                       **United States District Judge**