UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KYLE LAMAR PASCHAL-BARROS,<br>      Plaintiff, | :<br>:<br>: |
| v. | :    CASE NO. 3:19-cv-573 (VLB) |
| HENRY FALCONE, et al.,<br>      Defendants. | :<br>:<br>: |

**MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT**

The plaintiff, Kyle Lamar Paschal-Barros, commenced this civil rights action asserting claims for denial of due process in connection with a disciplinary charge and classification decision. The remaining claim is for denial of due process at the classification hearing against Counselor Supervisor Tugie, Director Maiga, and John Doe 2[1] ("the defendants"). The defendants have filed a motion for summary judgment. For the following reasons, the defendants' motion is granted.

**I. Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113-14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a

---

[1] John Doe 2 was never identified or served. Accordingly, the Court dismisses John Doe 2 under Federal Rule of Civil Procedure 4(m). *See Romagnano v. Town of Colchester,* 354 F. Supp. 2d 129, 133 (D. Conn. 2004) (dismissing unidentified Doe defendants who had not been served).

verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113-14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense …." *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "'rely on conclusory allegations or unsubstantiated speculation' but 'must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact.'" *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented "party's papers liberally and interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d

Cir. 2000).

## II. Facts[2]

In December 2016 and January 2017, plaintiff was an inmate in the custody of the Connecticut Department of Correction. Defs.' Local Rule 56(a)1 Statement, Doc. #34-14 ¶ 1. On December 8, 2016, Warden Falcone sent a memorandum to District Administrator Quiros and the Director of Inmate Classification and Population Management asking that plaintiff be considered for Administrative Segregation placement at Northern Correctional Institution ("Northern") because of his assaultive and disruptive behavior. *Id.* ¶ 2. District Administrator Quiros approved the request the following day. *Id.* ¶ 3.

On January 9, 2017, Counselor Verrastro served plaintiff a notice stating that an Administrative Segregation Hearing would be held on January 13, 2017. *Id.* ¶ 4. The notice cited plaintiff's disciplinary history and several recent incidents of assaultive or disruptive behavior as reasons for the placement. *Id.* Plaintiff admits speaking with Counselor Verrastro about Administrative Segregation placement but denies receiving the notice. Pl.'s Local Rule 56(a)2 Statement, Doc. #36-1 ¶ 4. Plaintiff selected Correctional Officer Medina as his advocate and identified two inmate witnesses. Doc. #34-14 ¶ 5.

Later that day, plaintiff was involved in a mental health incident and the on-call psychiatrist ordered plaintiff transferred to the inpatient medical unit on fifteen-minute observation. *Id.* ¶ 6. The social worker who responded to the code

---

[1] The facts are taken from the parties' Local Rule 56(a) Statements and exhibits.

indicated that plaintiff made a suicidal gesture, he tied a sheet around his neck, and statements of intent to self-harm.  *Id.*

Officer Medina met with plaintiff about the Administrative Segregation hearing.  *Id.* ¶ 7.  Following the meeting, Officer Medina prepared an Advocate Report setting forth plaintiff's position.  *Id.* ¶ 8.  Plaintiff signed the report.  *Id.*  In the report conclusion, Officer Medina states that plaintiff no longer wanted inmate witnesses.  *Id.*  The report, dated January 10, 2017, included plaintiff's statements about his deteriorating mental health and Officer Medina's opinion that no further decisions should be made about Administrative Segregation placement until plaintiff's mental health status improved.  *Id.* ¶ 9.

Dr. Patel, along with psychologist Dr. Pieri, met with plaintiff on January 10, 2017.  *Id.* ¶ 10.  Plaintiff was alert; oriented to time, place and person; and had no psychomotor agitation.  *Id.*  He was anxious and angry and was experiencing stress connected to family issues and his history of sexual abuse as a child.  *Id.*  Plaintiff had previously been diagnosed with post-traumatic stress disorder ("PTSD"), mood disorder, attention deficit hyperactivity disorder ("ADHD"), and borderline personality disorder.  *Id.*  Dr. Patel diagnosed a personality disorder and continued plaintiff's medication and the fifteen-minute observation.  *Id.*

Dr. Patel saw plaintiff again on January 11, 2017.  *Id.* ¶ 11.  Plaintiff reported feeling suicidal but stated that he had no plans to harm himself.  *Id.*  Dr. Patel diagnosed borderline personality behavior and continued the observation order.  *Id.*  Dr. Pieri also saw plaintiff on January 11, 2017.  *Id.* ¶ 12.  Dr. Pieri noted that

plaintiff was concerned that the warden wanted to send him to Administrative Segregation. *Id.* Although plaintiff reported depression and suicidal thoughts, Dr. Pieri stated that plaintiff was future oriented, alert, had good eye contact, and spoke in a confident manner. *Id.* Based on her observations, Dr. Pieri determined that plaintiff's behavior that resulted in the code, was motivated by his desire to avoid a transfer to Administrative Segregation. *Id.* Dr. Pieri concluded that plaintiff did not need inpatient care and intended to discuss his return to the restricted housing unit ("RHU") with his mental health team. *Id.* Plaintiff disagrees with Dr. Pieri's conclusions.

On January 12, 2017, Dr. Patel saw plaintiff, who had no complaints, and discussed his case with the mental health team. *Id.* ¶ 13. Dr. Patel discharged plaintiff from inpatient case and returned him to the RHU on Behavior Observation Status, which included fifteen-minute observation. *Id.* Dr. Patel also reduced plaintiff's mental health score from 5 to 3 because he was not acutely suicidal and did not require inpatient care. *Id.*

Plaintiff's Administrative Segregation hearing was scheduled for January 13, 2017 by videoconference with Counselor Supervisor Tugie as the hearing office. *Id.* ¶ 14. The defendants state that plaintiff refused to leave his cell to attend the hearing. *Id.* ¶ 15. Although plaintiff has no recollection of what happened, he has submitted an affidavit from inmate C. Wallace stating that no one came to plaintiff's cell to offer him a chance to attend the hearing. Wallace Aff., Doc. No. 36-6, ¶ 4. Deputy Warden Jones sent Counselor Supervisor Tugie an email reporting that

plaintiff refused to leave his cell to attend the hearing.  Doc. #34-14 ¶ 15.  Counselor Supervisor Tugie reviewed plaintiff's Administrative Segregation file including Warden Falcone's letter requesting the Administrative Segregation hearing.  *Id.* ¶ 17.

Dr. Pieri saw plaintiff on January 13, 2017.  *Id.* ¶ 19.  She told him that he was being transferred to Administrative Segregation and offered him psychological testing to determine what mental health treatment was warranted.  *Id.*  Plaintiff was tapping his head against the door and refused to speak to her.  *Id.*  Dr. Pieri noted that this behavior was unusual for plaintiff and opined that it was an attempt to avoid transfer to Administrative Segregation.  *Id.*  Plaintiff disagrees with Dr. Pieri's assessment and alleges that he was banging his head against the cell door window with sufficient force to cause bleeding.  Pl.'s Aff., Doc. #36-4 at 8, ¶ 7.  Inmate Wallace also observed plaintiff banging his head forcefully enough to cause bleeding.  Doc. #36-6 ¶ 3.

On January 13, 2017, Dr. Pieri spoke to mental health staff at Northern, advising them that plaintiff was being transferred to Administrative Segregation on Behavior Observation Status.  Doc. #34-14 ¶ 20.  Plaintiff was transferred to Northern the same day and placed in the inpatient medical unit.  *Id.* ¶ 21.

On January 17, 2017, Counselor Supervisor Tugie completed a Restrictive Status Report of Hearing for Placement or Removal.  *Id.* ¶ 22.  She included the reasons for Administrative Segregation placement, noted plaintiff's unwillingness to leave his cell to attend the hearing, and recommended Administrative

Segregation placement because of plaintiff's ongoing assaultive behavior. *Id.* Director Maiga reviewed the report and recommended Administrative Segregation placement. *Id.* ¶ 23.

Dr. Frayne, then the psychologist at Northern, saw plaintiff in the inpatient medical unit on January 17, 2017 to perform a mental health evaluation and suicide risk assessment. *Id.* ¶ 24. Dr. Frayne noted that plaintiff had made a safe adjustment to Northern and was future oriented. *Id.* He discharged plaintiff from Behavior Observation Status and authorized his transfer to the Administrative Segregation unit. *Id.*

Dr. Gagne, the psychiatrist at Northern, also saw plaintiff on January 17, 2017. *Id.* ¶ 25. Plaintiff's thought process was logical and linear, his judgment and insight were intact, and he denied any suicidal ideation or hallucinations. *Id.* Dr. Gagne told plaintiff that his diagnoses of PTSD and ADHD may no longer be current, and he approved plaintiff's discharge to Administrative Segregation. *Id.*

On January 24, 2017, plaintiff filed an administrative remedy appeal of the decision authorizing his Administrative Segregation placement. *Id.* ¶ 27. In the appeal, plaintiff stated that he intentionally received disciplinary reports because he did not feel safe and had not been approved for protective custody. *Id.* He did not say that he did not receive adequate notice of the hearing or that he was unable to meaningfully participate in the hearing. *Id.* ¶ 28.

III. Discussion

The defendants move for summary judgment on three grounds: (1) plaintiff

failed to exhaust his administrative remedies, (2) plaintiff received constitutionally required notice and opportunity to be heard, and (3) the defendants are protected by qualified immunity.

The Court first considers the defendants' argument that plaintiff failed to exhaust his administrative remedies before filing suit. The Prison Litigation Reform Act requires prisoners to exhaust administrative remedies before filing a federal lawsuit relating to prison conditions. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). This exhaustion requirement applies to all claims regarding "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 524, 532 (2002). Exhaustion of administrative remedies permits prison officials to address complaints before being subjected to suit and reduce litigation of the complaint can be resolved satisfactorily within the administrative process. *Jones v. Bock*, 549 U.S. 199, 219 (2007).

Exhaustion of all available administrative remedies must occur regardless of whether the administrative procedures provide the relief that the inmate seeks. *See Booth v. Churner*, 532 U.S. 731, 741 (2001). Furthermore, prisoners must comply with all procedural rules regarding the grievance process prior to commencing an action in federal court. *See Woodford v. Ngo*, 548 U.S. 81, 90-91, 93 (2006) (proper exhaustion "means using all steps that the agency holds out ...

(so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules"). Special circumstances will not relieve an inmate of his or her obligation to adhere to the exhaustion requirement. An inmate's failure to exhaust administrative remedies is only excusable if the remedies are in fact unavailable. *See Ross v. Blake*, ___ U.S. ___, 136 S. Ct. 1850, 1858 (2016).

Exhaustion of administrative remedies is an affirmative defense. Thus, the defendant bears the burden of proof. *See McCoy v. Goord*, 255 F. Supp. 2d 233, 247-48 (S.D.N.Y. 2003) (citing *Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999)).

Inmate administrative remedies are governed by Department of Correction Administrative Directive 9.6. Defs.' Mem. Ex. 11, Doc. #34-11. Section 8 provides that a classification decision for Administrative Segregation placement may be appealed by placing administrative remedy form CN 9602 in the designated box within fifteen days from the classification decision. There is no further appeal.

Plaintiff filed his appeal on January 24, 2017, identifying several reasons why the placement decision should be overturned. Doc. #34-12 at 4-6. The defendants argue that plaintiff did not properly exhaust his administrative remedies because he did not assert lack of notice and inability to participate in the hearing, the claims he asserts in this action, in his appeal. In response, plaintiff acknowledges that the did not raise these claims, but argues that appropriate administrative remedies were not available to him because subsections 2 and 7 of Directive 9.6(5)(E) render the administrative remedy process inadequate to address all his challenges to

Administrative Segregation placement. Doc. # 36-3.

Subsection 2 provides that "[e]ach request for an administrative remedy must be submitted on a separate CN 9602, Inmate Administrative Remedy Form." Doc. #34-11 at 5. Subsection 7 provides: "A repetitive request for administrative remedy may not be filed by the same inmate when a final response has been provided and there has been no change in any circumstances that would affect the response; or when the initial request for an administrative remedy is still in process." *Id.* Plaintiff contends that he could only include one "issue" per administrative remedy and, therefore, was unable to raise his other issues because repetitive administrative remedies are not permitted.

Plaintiff's argument is unpersuasive. Subsection 2 limits him to one request per form. Plaintiff's request in this instance is a challenge to the Administrative Segregation placement decision. Subsection 2 would preclude, for example, a challenge to an alleged use of excessive force on the same form but would not preclude inclusion of all his reasons why he believes the placement decision was incorrect. Section 4 of the 9602 form, entitled "STATE THE PROBLEM AND REQUESTED RESOLUTION," instructs the prisoner to "[p]rovide any factual information that is applicable." By its own terms, the form requests any applicable facts, not just some facts.

A review of plaintiff's CN 9602 form shows that he listed three distinct reasons why the decision should be overturned: his advocate did not speak to his designated witnesses, the allegation that he used restraints as a weapon cannot

be substantiated, and he is not a danger to institutional safety and security because he intentionally received minor disciplinary reports to remain in RHU out of fear for his safety. If plaintiff understood the directive to restrict him to only one challenge to the decision, he would not have included three distinct challenges in the appeal. In addition, if plaintiff's reading of the directive was correct, the appeal would have been rejected for including multiple requests on one form. It was not. Furthermore, if plaintiff's assumption that "request" meant an argument challenging the official action was correct, then a second form challenging the official action for a different reason would not be a repetitive request.

The Court concludes that plaintiff failed to properly exhaust his administrative remedies before commencing this action. He did not include lack of notice and inability to participate in the hearing as grounds for his appeal of the Administrative Segregation placement decision depriving the defendants of the opportunity to resolve the matter without court involvement. The defendants' motion for summary judgment is granted on this ground.[3]

IV. Conclusion

The defendants' motion for summary judgment [Doc. #34] is GRANTED on the ground that plaintiff failed to properly exhaust his administrative remedies before commencing this action. The Clerk is directed to enter judgment and close this case.

---

[3] As the Court concludes that summary judgment should be granted on this ground, it need not consider the other grounds raised by the defendants.

The defendants' motion to seal plaintiff's medical chart [Doc. #32] is **GRANTED.**

**SO ORDERED this 1st day of September 2020 at Hartford, Connecticut.**

<u>Vanessa Bryant</u> Digitally signed by Vanessa Bryant
Date: 2020.09.01 17:50:25 -04'00'
**Vanessa L. Bryant
United States District Judge**